ETHELBERT BARKSDALE ET AL. *v.* CAPITAL CITY REALTY COMPANY ET AL.

[42 South. Rep., 668.]

WILLS. *Construction. Rights acquired. Trust estate.*

   Where a testatrix devised her land to her living children and bequeathe to her grandchildren, whose parents were dead, whatever a designated number of acres of the land, less than the whole tract, "will bring well sold," without describing the acres to be sold:

   (*a*) The provision for the grandchildren is not void for uncertainty;

   (*b*) They are entitled to the money value of the designated number of average acres of the land when well sold;

   (*c*) Such value should be ascertained as of the date of one year from the death of the testatrix or one year from the date of letters testamentary; and

   (*d*) The testatrix's children, as trustees, are under duty to sell "well" the designated number of acres of average land and pay the proceeds to the grandchildren.

FROM the chancery court of, first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

Barksdale and others, the appellants, were complainants in the court below; the Capital City Realty Company and others, the appellees, were defendants there. The suit sought to have construed the will of complainants' grandmother, a Mrs. Wright. From a decree favorable to defendants the complainants appealed to the supreme court.

The controversy arises over the construction of the will of Mrs. Kate D. Wright, deceased, which is, omitting immaterial parts, as follows:

"My last will and testament is that my children, T. C. Wright, Mary Winslow, Katie B. Holland, and Sallie Ballew, will

arrange among themselves the division of my place, our home, Eureka. Daisy [another child, the wife of George Dorsey] is to have equal share with them. . . . I want Lilla May's children [the appellants here] to have whatever fifteen acres of land will bring well sold, my son T. C. Wright to act as their guardian till the youngest is of age. . . . I want Perry's son Jim to have whatever five acres of land would bring well sold. I request my son, T. C. Wright, to act as guardian for Jim. . . . In case of Jim's death, his money or land is to revert to the heirs, T. C. Wright, Mary, Katie, Sallie and Daisy. If either of Lilla May's children dies, then I request that his portion be divided between the other two children. If all of them die, then I request that the property I willed to them revert to the above-named heirs, T. C. Wright, Mary, Katie, Sallie and Daisy. I want Cordell [T. C.], Katie, Mary, Sallie and Daisy to keep the home just as long as they consider best, and do with any personal property as they deem best. . . . Katie owns $1,000 besides her share."

The Lilla May and Perry mentioned in the will were children of the testatrix who had died prior to the making of the will. Jim, Perry's son, was an infant at the time of the death of the testatrix. He has been settled with by the other heirs, and is not a party to this controversy. Lilla May's children were all infants at the time of the death of their grandmother, the testatrix, and are the appellants here. All the other children mentioned in the will survived the testatrix and were adults at the time of her death. They are defendants to the bill, as are also various purchasers and incumbrancers of the property who claim through them, the Capital City Realty Company being one of the purchasers. The appellants allege in their bill that the trust imposed by the will has never been performed, and claim that they are now entitled to their devise of "whatever fifteen acres will bring well sold," and that, after setting aside this devise and the devise to Perry's son Jim and the bequest of $1,000 to

Katie, they are entitled to a one-seventh interest in the property of the testatrix.

The Capital City Realty Company filed an answer, making it a cross-bill, showing that there was still a large unpaid balance due by said company to its vendors on the purchase price, and that it stood ready to pay this money into court or as the court may order. The adult children of Mrs. Wright answered, admitting that there was a legacy in said will for the benefit of the appellants, a charge upon the property, and aver that they are willing to pay same. Both answers deny that the appellants are entitled to a one-seventh interest in the estate after the payment of the legacies, or that appellants have any interest in the land whatever. The other defendants demurred. The court below sustained the demurrers, but granted complainants an appeal to settle the principles of the cause. The court below adjudged that the testatrix devised the lands to her children named in the will, and that her grandchildren, appellants, took nothing except a legacy to be paid to each of them in money, and that the amount should be ascertained by taking proof as to the average value per acre of the land one year from the date of the death of the testatrix, and that each appellant should receive the proceeds of five acres so valued, together with interest at six per cent per annum from that date to date of payment.

*Brame & Brame,* for appellants.

After setting apart the fifteen acres devised to themselves and the five acres to James Wright and the payment of the legacy of one thousand dollars to Kate B. Holland, appellants are entitled to a one-seventh interest in all the property.

Heirs at law are favored and are not to be disinherited by conjecture, but only by express words or by necessary implication. 30 Ency. Law, 669, and many cases cited in the notes; among them *Scott* v. *Guernsey,* 48 N. Y., 106.

This is true, though the will gives to an heir a legacy and states that this is all that is intended for the legatee. 30 Ency. Law,

669, and many cases cited in the notes, among them *Ford* v. *Whedbee*, 1 Dev. & B. (N. C.), 16. See especially *Seigul estate*, 213 Pa., 14. See also 1 L. R. A. (N. S.), 397; also 72 N. Y., 408; *Clark* v. *Leupp*, 88 N. Y., 228; 142 N. Y., 43; *Goodmier* v. *Coddington*, 154 N. Y., 283.

Interests undisposed of pass as a rule to the heir at law or next of kin, as the case may be, who can only be excluded by express words or by plain and necessary implication. 30 Ency. Law, 817, and many cases cited in the notes, including *Lucky* v. *Dykes*, 2 Smed. & M., 60.

The will in this case does not expressly give the Eureka plantation to the five children named, who were to make the division to the exclusion of the children of Lilla May and the son of Perry. In order to exclude them, resort must be had to argument or deduction, and this is not allowable. These heirs can only be excluded by express words or by necessary implication. This is the universal rule of the authorities.

It is assumed by opposite counsel throughout in this case, and by the lower court, erroneously, as we submit, that complainants only received a legacy. But we deny that the will gives them a legacy or that any of the rules pertaining to any kind of legacy have any application to or bearing upon the rights of complainants under this will. There are only three kinds of legacies— general, specific and demonstrative. The provision in this will is neither. Certainly it is not a general legacy. General pecuniary legacies, though made payable out of the personal estate, are a charge on the lands where there is a deficiency of the personal estate. This is illustrated in the case of *Wilcox* v. *Wilcox*, Allen (Mass.), 252.

Manifestly it would not be claimed that the amount to be paid to these complainants is a charge on the lands and personal estate generally, or a charge on anything except the fifteen acres of land which is to be sold.

Where a legacy is charged on lands generally, yet this will not exonerate the personal estate unless an intent to such effect

appears in the will.    An illustration of this is *Tobe* v. *Hardy,* 6 Cow. (N. Y.), 333.    This, of course, refers to a legacy for a certain sum of money, and the rule has no application to such a devise as is made here. .

A specific legacy is a bequest of a particular thing or a certain designated sum of money, as a diamond or money in a certain bank.    Such legacies are to be satisfied in full if the thing or money bequeathed exists, though the other and general bequests may fail entirely.    An illustration of this is *Heslet* v. *Heslet,* 8 Ill. App., 22.

This again refers to a certain sum of money or a certain article of property, and has no applicability to a devise such as we are considering here.

A devise to a son of three thousand dollars on arriving at age, to be paid out of the proceeds of the sale of certain lands, is a vested demonstrative legacy, and had preference over other legacies not charged on the same property.    *Croom* v. *Whitfield,* 45 N. C., 143.

Where a legacy is demonstrative—that is, a legacy for money is given with a demonstration of the particular fund or source of payment—it will not fail even though the source from which it was to be paid fails or never had any existence.    For the application of this rule, sée the case of *Bradford* v. *McConihay,* 15 W. Va., 766.    This refers to a legacy of quantity.

We have referred to these different kinds of legacies and the rules applicable to the same in order to show that the provision for complainants in this case is not a legacy at all.    It is simply a devise of fifteen acres of the property itself, with a provision that it is to be sold and the proceeds paid over to these children. The fact that there was to be a conversion; that the land was to be sold, does not change the inherent character of the devise to make the provision a mere legacy.

It was not to be sold by the executor, because the will names no executor.    It was not to be sold by the administrator, because the will gives him no such power.    Then who was to sell it?

Were the other devisees, T. C. Wright, Mary Winslow, Kate B. Holland, Sallie Ballew and Daisy Dorsey, or either of them, to make the sale? Clearly not, because there is no provision in the bill authorizing them to sell, and a power of sale must be expressed or raised by necessary implication.          11 Ency. Law, 1046, and notes; *Clark* v. *Hornthal,* 47 Miss., 434.

*Longino, Willing & Wilson,* for appellee, Capital City Realty Company.

Where there is no ambiguity in the words of a will, there is no room for construction.          *Vannerson* v. *Culbertson,* 10 Smed. & M., 150; *Tucker* v. *Stites,* 39 Miss., 196.

In the construction of wills, the main object is to ascertain the intention of the testator; the intention is to be gathered from the whole will, and, if legal, is to be carried out, notwithstanding it may violate technical rules which relate to the construction of words rather than the nature of the estate.          *Sorsby* v. *Vance,* 36 Miss., 564.

In the construction of a will, every part and provision must be made, if possible, to harmonize, and be consistent with the other parts.          A construction will not, therefore, be put upon a clause of doubtful import, which would make it irreconcilably inconsistent with another plain and clear provision of the will. *Dean* v. *Nunnaly,* 36 Miss., 358.

Let us apply these rules to the instant case.          The will in controversy was not drawn by a lawyer, and is therefore crude in its terms and inartistically drawn, but it leaves no room for doubt as to the meaning of the testator.

What did Mrs. Wright intend to devise in the first paragraph of her will? . Her manifest intention was to devise her home to her five children, named in the paragraph.

The Eureka home is devised to them and Daisy Dorsey, else what is the meaning of the words, "will arrange among themselves the division of my place, our home, Eureka.          Daisy is to have an equal share with them.

As a matter of fact, we believe this bequest is void for uncertainty. Surely it is not a devise of five acres of land to each of said children. If so, what five acres of land was devised? Suppose Lilla May's children should bring an act of ejectment for the land against the Capital City Realty Company or any other purchaser claiming under the will, which five acres of the land would each of Lilla May's children recover?

*McWillie & Thompson,* for appellee, Jackson Building and Loan Association.

The claim of the appellants arises out of the following clause in the will of their grandmother, Mrs. Wright:

"I want Lilla May's children, Harris, Ethelbert and Lilla May, to have whatever fifteen acres of land will bring well sold."

We submit that this clause of the will is void.

1. It is not a devise, for the reason that it does not give any land, but what fifteen acres of land might bring when well sold, and, moreover, no particular fifteen acres is indicated.

2. It is not a legacy or bequest, because of uncertainty as to amount. Whether particular land is well sold or not depends upon contingencies so numerous and remote that it is impossible to say what was in the mind of the testator, and no particular land is here designated. If it be conceded outside of the terms of the will that reference was had to "Eureka," the home place of the testatrix, we are still confronted by the difficulty of locating the fifteen acres, the fair price of which was to measure the legacy. The place contained about three hundred and twenty acres, as the bill shows, and there is nothing to inform us whether the fifteen acres to serve as a means of measurement were to be located on the front of the property, where the land is quite valuable, or at the back, where it is much less valuable. The will does not direct the sale of fifteen acres located anywhere, but gives what fifteen acres located indefinitely would bring, if well sold.

· 3. By a preceding clause of the will it is directed that certain other descendants are to divide the home place among themselves. If the other descendants empowered to divide the property among themselves are to be treated as trustees in respect to the amount coming to appellants as the fair price of an unidentified parcel of land, persons dealing with them were under no duty to see that any money realized by sale or mortgage of the property was applied to the payment of such amount.

*Harper & Potter,* for appellees, Mary Winslow, Kate Holland, Daisy Dorsey, Cordell Wright, Samuel Livingston, Lavinia Holland, Jennings Holland, Pearl Holland, Moss Hogan and Mary E. Hogan.

Manifestly, the testator intended to give her grandchildren something, and that something she crudely expressed as follows:

"I want Lilla May's children, Harris, Ethelbert and Lilla May, to have whatever fifteen acres of land will bring well sold."

In the first place, the express language of this gift shows that the testator intended to give, not any specific land, but the proceeds of a sale of some fifteen acres, a specific legacy, and not a devise. If it be contended that this was a devise of land, then we say that it is absolutely void for uncertainty. The ambiguity shown here is a patent and not a latent ambiguity. It is impossible to say from the will what land was intended. There is nothing to show in what state, county, district, section, body or tract of land this fifteen acres is to be located, nor what particular fifteen acres is to be selected, if located. But the express language of the testator, "Whatever fifteen acres will bring," shows that the testator intended at most to give a money gift or legacy, the amount of which was to be determined by "whatever fifteen acres will bring." Clearly as a devise of land, it is void for uncertainty, and as a legacy even, it is difficult to understand how the court can, from such indefinite data, determine the amount of such legacy. But granting the most that can be

seriously claimed, that this is a specific legacy, the amount of which can be determined by the sale of some fifteen acres of land belonging to the testator at the time of her death, and that such legacy is a charge on and payable out of the proceeds of the sale of such fifteen acres of land, the question is, at what time the legacy became due and payable, and at what time the value of land that fixes the amount of the legacy is to be determined.

Now, under our law, every legacy is due one year after the appointment of the administrator, and the value of the legacy must be fixed and determinable on the day it became due—to wit, one year from the appointment of the administrator.

But if in the instant case it should appear that this is a specific legacy, payable out of the proceeds of land to be sold, then under the general rule the legacy was due one year from the death of the testator, and the value of the land and amount of the legacy must be fixed from and on that date, since land does not pass to the administrator, and suit to recover the legacy could be brought without awaiting the appointment of an administrator.

In 13 Am. & Eng. Ency. Law, 134, citing numerous cases, it is said: "When stock is bequeathed as a general legacy, the abatement will be regulated by the value of the stock, at the end of one year next after the testator's death."

And in 13 Am. & Eng. Ency. Law, 170, citing numerous cases, it is said: "The principle of *Maxwell* v. *Whittenhall, ante,* has been held inapplicable to a legacy directed to be raised solely from the proceeds of the sale of realty, and not out of proceeds of rents and profits, or by mortgage. In such case, the legatees can only claim interest from the period at which the sale of the real estate might reasonably have been effected—that is, one year from the testator's death."

*Green & Green,* for appellee, George Taylor.

The will did not give appellants a one-seventh interest in this property. The will is made exhibit to and part of the bill, and the cause being here upon demurrer, the rights as given by the

will control the averments of the pleader in reference thereto. Code 1896, § 528; *House* v. *Gumble,* 17 Miss., 259 (s.c., 29 South. Rep., 71; *McNeil* v. *Lee,* 79 Miss., 455 (s.c., 30 South. Rep., 821); *Montgomery* v. *Bank,* 79 Miss., 443 (s.c., 30 South. Rep., 635). The rights of the appellants must be determined by the terms of the will in the light of the facts averred in the bill.

By the first section of the will it is provided: "My last will and testament is that my children, T. C. Wright, Mary Winslow, Katie B. Holland and Sallie Ballew will arrange among themselves the division of my place, our home, Eureka. Daisy is to have equal share with them, leaving it in her brother's care, to hold for her as long as George Dorsey lives," etc.

Under the provisions that the place, Eureka, was given to the parties here named, and the power of making a division of the same was vested in the parties first named, and it was not to be made among the heirs as contended by the complainants, but expressly among themselves. The division, the grant of the right to make the division vested in the parties there named, and the power to do that which they were by the will instructed to do—they were to divide the place, and that place was to be divided among themselves—they were to be the parties entitled thereto.

WHITFIELD, C. J., delivered the opinion of the court.

The plain purpose of Mrs. Wright's will was to constitute the four children who were to make the division of her home place, Eureka, trustees for the purpose of selling and paying to the grandchildren named the proceeds of twenty acres of average land well sold. In other words, she charged the whole of her estate with whatever twenty average acres, well sold, would bring, making it the duty of these trustees to sell twenty acres of average value, and to pay the proceeds to the grandchildren indicated by the will. It is not a case of devise, or a case of legacy, speaking with legal accuracy. The will is inartificially drawn;

but the purpose of the testatrix is perfectly plain. It was the duty of these four heirs, charged with the division of the home place, Eureka, to sell twenty acres of average value, and pay the proceeds as indicated. This amount was charged as a trust upon the whole estate. The trustees did not execute the trust, as they ought to have done, and it is not for them now to quibble about these grandchildren receiving the sum due them, respectively, as of one year from the death of the testatrix, or as of one year from the taking out of letters of administration. This is not the case of a legacy. Since Perry's son has been settled with, and all the lands have been sold, the other grandchildren should receive the value of fifteen acres of average value as of the date of any sales made already or yet to be made, with six per centum interest thereon from date of said sales.

*Reversed and remanded, with direction to the court below to enter decree in accordance with this opinion.*